**UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

---

CENTRAL TRANSPORT INTERNATIONAL, INC.,

Plaintiff,

v. Case No. 06-CV-11913-DT

ALCOA, INC.,

Defendant.
_______________________________________/

**OPINION AND ORDER GRANTING DEFENDANT'S "MOTION FOR TRANSFER ON GROUNDS OF *FORUM NON CONVENIENS*"**

Pending before the court is Defendant Alcoa, Inc.'s ("Alcoa's") July 12, 2006 "Motion for Transfer on Grounds of *Forum Non Conveniens*." The court has reviewed the briefing in this matter and heard argument on the motion during a September 19, 2006 hearing. For the reasons stated below, the court will grant Defendant's motion.

## I. BACKGROUND

On or around November 15, 2004, Alcoa tendered a gearbox to Central Transport International, Inc. ("CTI") at CTI's Massena, New York facility. (Pl.'s Compl. at ¶ 6.) CTI was to transfer this gearbox from Massena, New York to consignee Lock-N-Stitch located in Turlock, California. (*Id*. at ¶ 7.) CTI claims to have delivered the gearbox on November 24, 2004. (*Id*. at ¶ 8.) Alcoa alleges that CTI never delivered the gearbox to Lock-N-Stitch, but instead delivered a package of saw blades that Lock-N-Stitch signed for when it arrived. (Def.'s Mot. Br. ¶ 3-4.) Alcoa further alleges that Lock-N-Stitch discovered the mistake, informed the parties, and had CTI pick up and

redeliver the saw blades. (*Id.* at ¶ 5-6.) Alcoa claims CTI looked for the gearbox, suggested that it may have been sold to a third party, and later concluded that the gearbox was lost. (*Id*. at ¶ 8-9.) The parties agree that Alcoa filed a Cargo Loss and Damage Claim on January 10, 2005. (Pl.'s Compl. at ¶ 9; Def.'s Countercl. at ¶ 14.) CTI did not pay the claim. (Def.'s Countercl. at ¶ 22.) Alcoa subsequently made a demand against CTI for $100,000 under the parties' transportation contract ("Contract"). (*Id*. at ¶ 16; Pl.'s Compl. at ¶ 10.) CTI responded by filing an action in this court requesting a declaration that Alcoa's claim for damages is limited to the value of the freight, which CTI alleges is $35,000, (Pl.'s Compl. at ¶ 12), and that CTI is not liable to Alcoa for the loss because the loss did not occur while the gearbox was in CTI's possession, (*id*. at ¶ 18). In its answer, Alcoa admitted that venue is proper in this court, but asserts that the United States District Court for the Northern District of New York would be a more appropriate venue. (Def.'s Am. Answer at ¶ 3.) Alcoa subsequently filed a motion for transfer on the grounds of *forum non conveniens*.

## II. STANDARD

Transfer of proper venue is governed by 28 U.S.C. § 1404(a),[1] which provides that "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." This provision is "intended to place discretion in the district court to

[1] Upon enactment of 28 U.S.C. § 1404(a), the doctrine of *forum non conveniens* is no longer an independent basis for transferring a case to an alternative forum in the United States. *See American Dredging Co. v. Miller*, 510 U.S. 443, 448 n.2 (1994) ("[T]he federal doctrine of *forum non conveniens* has continuing application only in cases where the alternative forum is abroad.").

adjudicate motions for transfer according to an 'individualized, case-by-case consideration of convenience and fairness.'" *Stewart Org., Inc. v. Ricoh Corp*., 487 U.S. 22, 29 (1988) (citing *Van Dusen v. Barrack*, 376 U.S. 612, 622 (1964)). "A district court 'has broad discretion to grant or deny a motion to transfer [a] case.'" *Phelps v. McClellan*, 30 F.3d 658, 663 (6th Cir. 1994) (quoting *Cote v. Wadel,* 796 F.2d 981, 985 (7th Cir. 1986)).

To transfer an action under § 1404(a), the following three requirements must be met: "(1) the action could have been brought in the transferee district court; (2) a transfer serves the interest of justice; and (3) transfer is in the convenience of the witnesses and parties." *Kepler v. ITT Sheraton Corp.*, 860 F. Supp. 393, 398 (E.D. Mich. 1994) (citing *Int'l Showcar Ass'n v. Am. Soc'y of Composers*, 806 F. Supp. 1308, 1310 (E.D. Mich. 1992); *In re Air Crash Disaster at Detroit Metro. Airport on Aug. 16, 1987*, 737 F. Supp. 391, 393 (E.D. Mich. 1989)). Factors to consider in determining whether to transfer venue include:[2]

(1) the convenience of witnesses;
(2) the location of relevant documents and relative ease of access to sources of proof;
(3) the convenience of the parties;
(4) the locus of the operative facts;
(5) the availability of process to compel the attendance of unwilling witnesses;
(6) the relative means of the parties;
(7) the forum's familiarity with the governing law;

---

[2] The parties agree that factors 5 through 7 do not favor either venue. (Def.'s Mot. Br. at 5; Pl.'s Resp. at 3 n.1.) Therefore, the court will not consider them for purposes of this motion.

(8) the weight accorded to the plaintiff's choice of forum; and

(9) trial efficiency and the interests of justice, based on the totality of the circumstances.

*Overland, Inc. v. Taylor*, 79 F. Supp. 2d 809, 811 (E.D. Mich. 2000) (citing *Pilates, Inc. v. Pilates Inst.*, 891 F. Supp. 175, 183 (S.D.N.Y. 1995)). The party seeking transfer of venue has the burden to establish that the new forum is more convenient. *Viron Inter. Corp. v. David Boland Inc.*, 237 F. Supp. 2d 812, 815 (W.D. Mich. 2002).

## III. DISCUSSION

### A. Whether the Action Could Have Been Brought in New York

As an initial matter, the court finds that this dispute could have been filed in the Northern District of New York, and CTI does not argue otherwise. Alcoa tendered the gearbox at issue to CTI in New York, Alcoa's investigation of the gearbox's whereabouts occurred there, and both parties have relevant business operations in New York. Thus, under 28 U.S.C. § 1391(a), venue would have been proper in New York because a substantial part of the events giving rise to the cause of action occurred there. Accordingly, the court turns to an analysis of whether a transfer to the Northern District of New York serves the interests of justice and the convenience of the witnesses and parties.

### B. Convenience of the Witnesses

The convenience of the witnesses is one of the most important factors in considering a motion to transfer venue. *See* 15 Wright, Miller & Cooper, *Federal Practice and Procedure*, § 3851 at 415 (2d Ed. 1986); *Thomas v. Home Depot*, U.S.A.,

Inc., 131 F. Supp. 2d 934, 937 (E.D. Mich. 2001). The total number of witnesses suffering inconvenience is less important than the number of key witnesses that would be inconvenienced. *Thomas*, 131 F. Supp. 2d at 937 ("One chief witness's convenience, in fact, may outweigh the convenience of other, less significant witnesses.") (citation omitted). For this purpose, the parties should identify witnesses and the nature and significance of their testimony. *Id.*

Alcoa claims its key employee witnesses, Tenley L. Amo, Diane Stickney, John Kesner, and Armand Dion, are located in New York and can testify to the following:

> [T]he pick-up of the "gearbox," the failure of the delivery of the "gearbox," the efforts by Alcoa to locate the "gearbox," the profits lost while the "gearbox" was missing, the value of the "gearbox," and any other incidential, consequential and special damages that Alcoa is entitled to receiving [sic] from Central.

(Def.'s Mot. Br. at 3.) On the other hand, CTI generally maintains that "[a]ll efforts to locate the allegedly lost freight were undertaken and directed by CTI employees located in Warren, Michigan," and its unnamed "witnesses, located in the Eastern District of Michigan can testify regarding the issues of the location of the gearbox and to whom it was shipped and whether or not it was sold to another party." (Pl.'s Resp. at 3-4.) Additionally, CTI identifies two Michigan witnesses who can testify regarding damages: Jeff Cackowski and Dave Rodewald. (*Id*. at 4-5.)

Essentially, both CTI and Alcoa claim to have witnesses in Michigan and New York, respectively, who can either testify to their unsuccessful efforts to locate the gearbox, or on the issue of damages. However, Alcoa has also identified witnesses in New York who can testify regarding the tender of the gearbox to CTI. This testimony is

significant because it could help identify whether the gearbox was properly labeled, and which party actually labeled the package. These facts relate to the issue of liability, and could possibly shed light on the gearbox's present location. Because all the witnesses who can testify to the labeling and tender of the gearbox reside in New York, the convenience of these witnesses favors a transfer to the Northern District of New York.

**C. Locus of Operative Facts**

The locus of operative facts favors New York for the same reason. The labeling of the gearbox and its tender occurred in New York. (Pl.'s Compl. at ¶ 6.) Additionally, Alcoa allegedly received notice at its New York office that Lock-N-Stitch did not receive the gearbox, and Alcoa's New York office undertook the task of locating the gearbox. (*See* Amo Aff. at 2, Def.'s Ex. A.) On the other hand, CTI's Michigan office investigated the gearbox's location and processed Alcoa's claim. (*See* Cackowski Aff. at 2.)[3] Although this case involves events that have occurred in a number of states, the key event occurred in New York, and this factor therefore slightly favors transfer.

**D. Convenience of the Parties**

Consideration of the convenience of the parties does not strongly favor either venue. CTI is a Michigan corporation with its principal place of business, including its operations and claims center, in Michigan. (Pl.'s Compl. at ¶ 4.) CTI also has ten service centers located in New York. (Def.'s Mot. Br. at 3.) Alcoa, a Pennsylvania

---

[3] CTI also claims that the contract was negotiated and executed in Michigan. (Cackowski Aff. at 1.) Because Alcoa contests this claim (Def.'s Reply Ex. A.), the court will not consider this alleged contact.

corporation, conducts business in many states, including Pennsylvania, Michigan and New York. (*See* Pl.'s Compl. at ¶ 5; Def.'s Mot. Br. at ¶¶ 1, 16.) Although Alcoa argues that CTI's counsel is not even located in Michigan, but instead in Pennsylvania (Def.'s Mot. Br. at 3), CTI responds that its counsel is admitted to practice in the Eastern District of Michigan, and not in New York (Pl.'s Resp. at 6). The court concludes that while Michigan may be an inconvenient forum for Alcoa, New York would be an equally inconvenient forum for CTI. Therefore, this factor does not favor either district.

**E. Location of Relevant Documents and Access to Proof**

Although both parties generally state that their choice of forum allows for ease of access to relevant documents, neither party discloses to the court with any specificity either the number of documents or their relevance to this case. Thus, the court is unable to adequately weigh this factor. Moreover, access to documents is a less significant factor in this "era of photocopying, fax machines, and Federal Express." *Choker v. Bank of Am.*, 984 F. Supp. 757, 766 (S.D.N.Y. 1997). Thus, Alcoa has not shown that transferring this case to the Northern District of New York would provide greater ease of access to sources of proof and relevant documents.

**F. Plaintiff's Choice of Forum and the Interests of Justice**

Both parties agree that CTI's choice of forum must be given deference, especially because CTI resides in its chosen jurisdiction. *See Thomas*, 131 F. Supp. 2d at 937. Alcoa argues that in this case, however, CTI's choice of forum should be given less deference because CTI "rushed to the courthouse" to file a declarative action in this court after Alcoa made its demand. (Def.'s Reply at 4.) Under these circumstances, the

interests of justice may require a court to give less deference to a plaintiff's choice of forum to discourage anticipatory litigation and forum shopping.

As Alcoa states in its motion, "'deference' does not mean that transfer cannot occur over the Plaintiff's objection, . . . [o]therwise a motion such as this would never be granted." (Def.'s Mot. Br. at 5.) Section 1404(a) accords broad discretion to district courts, and a plaintiff's choice of forum is only one relevant factor for its consideration. *See Norwood v. Kirkpatrick*, 349 U.S. 29, 32 (1955). As articulated by another court in this district, "the movant must only demonstrate that the 'forum to which it desires to transfer the litigation is the more convenient *vis a vis* the plaintiff's initial choice.'" *Riley v. Cochrane Furniture Company, Inc*., No. 94-71016, 1994 WL 16014441 *2 (E.D. Mich. Jul. 7, 1994) (quoting *Mead Corp. v. Oscar J. Boldt Constr. Co.*, 508 F. Supp. 193, 198 (S.D. Ohio 1981)). Alcoa has demonstrated that New York is more convenient than Michigan by showing that the key witnesses in this case reside there.

## IV. CONCLUSION

Most of the relevant factors do not strongly favor either forum. However, one of the most significant factors, the convenience of the witnesses, favors transfer to the Northern District of New York. Accordingly,

IT IS ORDERED that Defendant Alcoa's July 12, 2006 "Motion for Transfer on Grounds of *Forum Non Conveniens*" [Dkt. # 11] is GRANTED.

s/Robert H. Cleland
ROBERT H. CLELAND
UNITED STATES DISTRICT JUDGE

Dated: September 29, 2006

I hereby certify that a copy of the foregoing document was mailed to counsel of record on this date, September 29, 2006, by electronic and/or ordinary mail.

s/Lisa G. Wagner
Case Manager and Deputy Clerk
(313) 234-5522